IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BRIAN COCHRAN                                                                    PLAINTIFF

      v.                              CIVIL NO.        2:10-CV-02179

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                DEFENDANT

**<u>MEMORANDUM OPINION</u>**

     Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision

of the Commissioner of Social Security Administration (Commissioner) denying his claim for a

period of disability and disability insurance benefits (DIB) and supplemental security income

("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial

review, the court must determine whether there is substantial evidence in the administrative

record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).


**I.      Procedural Background:**

     The plaintiff filed his application for SSI on December 20, 2007, alleging an onset date of

November 15, 2005, due to plaintiff's arthritis in his right ankle and high blood pressure (T.

102).  Plaintiff's application was denied initially and on reconsideration.  Plaintiff then requested

an administrative hearing, which was held on March 10, 2009 at which Plaintiff was present and

represented by counsel.

     At the time of the application, plaintiff was 46 years of age and possessed a GED.  The

Plaintiff  had past relevant work ("PRW") experience as an unskilled laborer  (T. 41).

On August 24, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's arthritis and high blood pressure did not meet or equal any Appendix 1 listing. T. 36.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform unskilled sedentary work except that he was unable to push/pull with his right lower extremity, crouch and climb ladders, ropes and scaffolds T. 37.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could not perform his past relevant work but that there were unskilled, sedentary jobs within the economy that the Plaintiff could perform.  T. 25).

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary."  *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden

of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   Discussion:

The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform unskilled sedentary work except that he was unable to push/pull with his right lower extremity, crouch and climb ladders, ropes and scaffolds (T. 37). The regulations define

"unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary when carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

## A. RFC Assessment

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering

medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 *citing  Lauer v. Apfel*, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

### 1.  High Blood Pressure and Shoulder Pain

The ALJ correctly discounted the Plaintiff's complaints of high blood pressure and shoulder pain and that determination is not at issue.

### 2.  Right Ankle Arthritis

The Plaintiff fractured his right ankle approximately 1992 (T. 230) and in June 2006 twisted it again and visited the VA clinic for treatment (Id.).  X-rays were taken by the VA and interpreted by Dr. Jeffrey Ferrell who diagnosed the Plaintiff with "Remote posttraumatic changes with severe arthritic changes in the right tibiotalar joint" (T. 204). An orthopedic consult was ordered by Dr. Garrett, the Plaintiff's treating physician.  The examination was performed by Dr. Oscar L. Henderson, M.D. on July 6, 2006.  Dr. Henderson stated that the Plaintiff "sustained a fracture about fifteen years or so ago and it was treated in a cast.  He now has slowly developed significant arthritis in his ankle.  There is significant talar tilt and complete loss of the joint space with marked attrition of bone and osteophytes formation[1] around the joint signifying end-stage osteoarthritis" (T. 191).

---

[1]Osteophyte is a bony outgrowth, usually found around a joint. It is commonly seen in degenerative joint disease. Mosby's Medical Dictionary, 8th edition. © 2009, Elsevier.

The Plaintiff's ankle was again x-rayed by the VA on March 30, 2007 because the Plaintiff was complaining of chronic ankle pain (T. 203).  Dr. Fareeda Al-Refai compared the June 2006 x-ray to the March 2007 one and found "Extensive degenerative changes involving the right ankle joint.  No acute fracture is seen.  There is hypertrophic bone formation also present, which appears to have increased in amount since the prior plain films of the right ankle" (Id.). Dr. Al-Refai's diagnosis was advanced degenerative changes of the ankle joint and that the "findings have worsened since 06/14/2006" (Id.).

Another x-ray performed on April 2, 2007 showed that the Plaintiff's "arthritis is worse" (T. 187). On March 10, 2008 the Plaintiff again complained of pain even though he was wearing his ankle brace (T. 212).

On April 9, 2008 Dr. Bill Payne, a non-examining consultive doctor, rendered a RFC Assessment which found that the Plaintiff could lift 10 pounds occasionally, less than 10 pounds frequently, stand and/or walk for 2 hours in an 8-hour work day, sit for about 6 hours in and 8-hour work day and had unlimited ability to push and/or pull(including operation of hand and/or foot controls) (T. 246).[2]  We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. *See, e.g., Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. (Id.).  See also *Cox v. Barnhart*  345 F.3d 606, 610 (C.A.8 (Ark.),2003)

---

[2]The court notes that there is a second RFC Assessment in the record (Exhibit 6F) but it is a duplicate. (T. 253-260).

On May 16, 2008 Dr. Garrett, M.D., the Plaintiff's treating VA physician, completed an Arthritis Residual Functional Capacity Questionnaire (T. 262-266). Dr. Garrett noted that the Plaintiff had reduced range of motion, joint instability, joint deformity and an abnormal gait (T. 262). He noted that the Plaintiff was capable of low stress jobs (T. 263) and that he could stand or walk less than 2 hours in an 8-hour work day and sit for at least 6 hours in an 8 hour work day. (T. 264). Dr. Garrett felt that the Plaintiff would only be able to stand for 15 minutes before needing to sit down (Id.) and that he would need to take unscheduled breaks (Id.). Dr. Garrett also limited the Plaintiff's to occasionally lifting less than 10 pounds and 10 pounds, he felt that the Plaintiff would never be able to crouch, climb ladders or climb stairs and that he would miss more than 4 days of work as a result of his impairment. (T. 265).

It is clear that if the ALJ adopted the opinion of Dr. Garrett, according to the testimony of the VE, there would not be any jobs (T.25-26) within the economy that the Plaintiff could perform.

Generally, an ALJ is obliged to give controlling weight to a treating physician's medical opinions that are supported by the record. *See Randolph v. Barnhart*, 386 F.3d 835, 839 (8th Cir.2004); 20 C.F.R. § 404.1527(d)(2). The opinion of a treating physician is accorded special deference and will be granted controlling weight when well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, The 1012-13 (8th Cir. 2000).

The medical evidence in the file is that the Plaintiff had degenerative arthritis of the right ankle that even in July 2006 was diagnosed as end-stage osteoarthritis. This diagnosis was by an orthopedic specialist. Opinions of specialists on issues within their areas of expertise are

"generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527.  There is nothing in the record that contradicts the medical fact that the Plaintiff's osteoarthritis was both degenerative and in the end-stage.

The Plaintiff was not sent for a consultive examination by a orthopedic specialist by the ALJ. The ALJ has a duty to fully and fairly develop the record.  *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made).

The ALJ accepts Dr. Garrett's opinion that the Plaintiff "is unable to push/pull with his right lower extremity, crouch and climb ladders, ropes and scaffolds"and incorporated these limitations into the RFC  (T. 37).  The inconsistency is that the non-examining consultive physician placed no restrictions on the Plaintiff's ability to push and/or pull (including operation of hand and/or foot controls) (T. 246) or any postural limitations (T. 247).  These conclusions were clearly NOT supported by the medical evidence and the ALJ corrected rejected it. These conclusions bring into question the credibility of the non-examining consultive opinion, yet the ALJ adopts the non-examining consultive conclusion concerning the Plaintiff's ability to stand and/or sit during an 8 hour workday.

The Plaintiff's condition was not going to get better and the medical evidence in the record shows the Plaintiff's condition to be worsening. Notwithstanding the medical evidence in the record the ALJ stated that he had considered Dr. Garrett's opinion he found that "opinion is more limiting than the objective medical evidence or record would support". (T. 40).  There is no explanation of why the medical records do not support Dr. Garrett's opinion. The failure of the

-8-

ALJ to give adequate reasons for discounting the opinion of the Plaintiff's treating physician is error.

**B. Development of the Record**

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

Dr. Henderson, while performing the orthopedic consult for Dr. Garrett, instructed that a brace was to be provided to the Plaintiff for all of his weight bearing activities. He then stated that if "this does not suffice to manage this, a fusion of his ankle joint would be the next step" (T. 191). It is clear that the Plaintiff was given a brace for his ankle but the ankle brace did not prevent the Plaintiff from having pain in his right ankle or enable him to perform in the work force (T. 212).

It is unknown why the Plaintiff has not had a fusion on the right ankle or what effect fusion surgery on the right ankle would have on the opinion of Dr. Garrett. In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability"). The ALJ, however, did not base her decision on the Plaintiff's failure to

obtain treatment nor does she even mention it.

The court believes remand is necessary to allow the ALJ to obtain an orthopedic consult, obtain evidence on why no fusion surgery was performed, and address interrogatories to the treating physician to determine the impact of fusion surgery on his opinion of the Plaintiff's ability to work.

**IV.    Conclusion:**

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this 1st day of November 2011.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE